## Filler Products, Inc. *v.* Corriere (et al., Appellant).

Argued January 6, 1955. Before STERN, C. J., STEARNE, JONES, BELL and MUSMANNO, JJ.

*Francis H. S. Ede,* with him *Edmund P. Turtzo,* for appellant.

*J. D. Fackenthal,* with him *S. Maxwell Flitter* and *Fackenthal, Teel & Danser,* for appellee.

OPINION BY MR. JUSTICE JONES, April 18, 1955:

At the trial of this action in assumpsit, brought to recover the unpaid balance of the consideration allegedly due the plaintiff company under a written contract, the court directed a verdict for the plaintiff against the corporate defendant for the face amount of the claim. At the same time the court, also by direction to the jury, relieved the individual defendants of liability on the ground that they were not personally obligated by the contract in suit. Motions by the corporate defendant for judgment n.o.v. and for a new trial were overruled and judgment was entered on the verdict from which the defendant company has appealed.

Stripped of the mass of collateral and currently irrelevant matter appearing by the pleadings and exhibits which, at first glance, gives the case an extremely complicated aspect, only two paragraphs of the contract sued upon were, or now are, material. Being in writing and unambiguous, those provisions were necessarily for the court to construe as a matter of law: *Onofrey v. Wolliver,* 351 Pa. 18, 21, 40 A. 2d 35. At an earlier stage of the proceeding, both the plaintiff and the defendant company had each moved for judgment on the pleadings. The court, then perceiving two possible issues of fact raised by the defendant's answer, properly refused both motions. However, neither of these prospective factual issues became material at the trial of the case. The one related to a possibly unreasonable delay in the plaintiff's delivery of the machine contracted for, but, at trial, the date of delivery was stipulated by the parties at a time well within the intendment of the contract as we shall herein-

after see. The other possible issue of fact stemmed from an allegation by the defendant that an important understanding of the parties as to what the contract consideration was intended to cover had been omitted from the written agreement through mutual accident and mistake. No testimony to such effect was either introduced or offered at trial. On the basis of the relevant and material evidence received at trial, the case was peculiarly one for a directed verdict according as the court construed the written contract, the pertinent portions of which read as follows:

"3. Pilgrim Food Products Company, Inc., [the responsible defendant] agrees to pay the sum of Ten Thousand Dollars ($10,000.00) to Filler Products, Inc., [plaintiff] in manner and form following: Five Thousand Dollars ($5,000.00) by certified check to be mailed to Filler Products, Inc. on February 1, 1950, and Five Thousand Dollars ($5,000.00) on February 15, 1950, in similar form and manner, with Bill of Lading attached to assure delivery of a certain Korn Kurl machine, complete, to [Pilgrim Food Products] by [Filler Products]. . . . 6. It is understood and agreed that the Korn Kurl machine, hereinabove referred to, shall be kept and operated by the [defendant] under certain terms and conditions similar to those existent in the contract between Filler Products, Inc. [plaintiff] and Flake Food Corporation [the owner and licensor of the machine]."

The first $5,000 payment, called for by the contract, was made timely and, consequently, is not here involved. The defendant company having failed, however, to make the second $5,000 payment and having also refused to accept delivery of the machine upon its arrival at destination, this suit was brought to recover the $5,000 due and unpaid. The defendant contends that the machine was not forwarded by the plaintiff

at the time contemplated by the contract, that the plaintiff did not own the machine, that the defendant was advised by a representative of the Flake Food Corporation that the plaintiff had no legal right to forward it to the defendant and, finally, that the plaintiff admitted that it had no such right. There is no merit in any of these contentions which, for the most part, are based on proffers by the defendant which the learned trial judge rejected as being irrelevant and immaterial to the claim under the contract.

As to the defendant's first contention that the machine was not shipped by February 15, 1950, there is no requirement in the contract, as the court below properly concluded, that the machine would be forwarded by that date. Actually, it had been so shipped. But no finding need be predicated of that fact. The plain intendment of paragraph 3 of the contract is that both of the $5,000 payments were to be made in advance of the plaintiff's shipment of the machine, the second payment to be made definitely on February 15, 1950, in order, as the agreement expressly states, to *assure* such delivery. The February 15th payment not having been made, the defendant has no cause for complaint that the machine was shipped on a bill of lading with sight draft attached. Clearly the defendant was not entitled to take possession of the machine until the second and final payment, which was then overdue, had been made. In its answer, the defendant itself alleged that the payment of the $10,000 consideration was intended as "an advancement for royalties and rentals to assure delivery" of the machine, and, in its brief, the defendant justifies this interpretation on the ground that "The Plaintiff Corporation . . . knew that the Defendant Corporation was bankrupt or insolvent or that its credit was bad, and for that reason the Defendant says that the $10,000.00 referred to was for advanced royalties

so that they would be assured of the delivery of a machine."

Nor is it of any significance that the machine did not arrive until March 3rd. The final payment due February 15th had neither been made nor tendered. The fact is that at no time prior to the institution of this suit did the defendant ever make any objection as to the time of the delivery. On the contrary, the defendant wrote the plaintiff on February 16, 1950,—"Also will you please advise the approximate time that you intend to send the machine up to us, as we want to plan just what commitments we have to make for basic." And, even several weeks after the machine arrived, the defendant, having unsuccessfully tried to raise the required $5,000, made an offer to pay the plaintiff $3,000 and give it a judgment note for the remaining $2,000. This proposal was acceded to by the plaintiff, but the defendant proved unable to raise even the $3,000, which would seem to be the real reason for its default rather than the inconsequential grounds which it now advances.

The defendant's second contention, that the plaintiff did not own the machine, is plainly irrelevant. The defendant admitted at trial that it knew at all times that the plaintiff was not the owner of the machine and that its rights thereto were derived from licensing agreements with the Flake Food Corporation. The contract in suit was not a sale of the machine by the plaintiff to the defendant but covered merely its licensing. The question of ownership of the machine was in no way involved.

The defendant's third contention, that it was advised by a representative of the Flake Food Corporation that the plaintiff had no legal right to forward the machine to the defendant, is based on an offer of testimony which the learned trial judge excluded. The

ruling was correct. A self-serving interpretation of the Flake licensing agreement by that company's representative was manifestly incompetent to affect the plaintiff's rights under that agreement which, by the way, was in writing, was in evidence and was, therefore, for the court to construe.

As to the defendant's fourth contention, there is no testimony whatsoever that the plaintiff admitted that it had no right to forward the machine to the defendant nor is there any testimony that it did not in fact have such authority.

Taking all of the testimony offered by the defendant as if it had been admitted in evidence and assuming it to be true, none of it, nor all of it together, constituted a legal defense to the defendant's contractual obligation to make the payment which the instant suit was brought to recover. At trial, the defendant, instead of supporting the defenses which it had set up in its answer, departed therefrom and sought to rest its case upon an entirely different theory, namely that it had not received any writing specifying its rights and liabilities in connection with its operation of the machine. Such a defense, not having been pleaded, was wholly inadmissible. It is a fundamental rule that a party waives all defenses which he does not present by his answer to the complaint: Pa. R. C. P. 1032. But, even if the belated defense were to be considered, there was nothing in the contract between the parties which entitled the defendant to receive such confirmation with respect to its operation of the machine. Paragraph 6 of the contract provided that the machine should be operated by the defendant under terms and conditions similar to those in the licensing agreement between the plaintiff and the Flake Food Corporation. The terms and conditions of the defendant's operation of the machine were accordingly fixed by reference to

the licensing agreement. Yet, the plaintiff did attempt to satisfy the defendant's excessive demand by submitting to it a proposed operating agreement which the defendant rejected out of hand and made redrafts without pointing out in what respect the writing submitted by the plaintiff was not satisfactory.

As the testimony offered by the defendant did not touch the issue and, consequently, presented no defense to the plaintiff's claim, there was nothing left for the trial judge to do but direct a verdict for the plaintiff: *Siegert v. Servel, Inc.*, 352 Pa. 316, 42 A. 2d 589.

Judgment affirmed.

Mr. Justice CHIDSEY took no part in the consideration or decision of this case.