Opinion by
Watkins, J.,
This is an appeal from the judgment of the Court of Common Pleas, Civil Division, of Allegheny County, Pennsylvania, in an action of trespass in which the jury determined liability in favor of the plaintiff-appellee, The Baltimore and Ohio Railroad Company, and against the defendant-appellant, C. J. Langenfelder & Son, Inc., in the stipulated amount of One Hundred Thousand Dollars ($100,000.00); and from the denial of post-trial motions.
This action was brought by the railroad to recover damages sustained by the collapse of a tunnel. In order to permit the passage of modern railroad cars, it was decided to lower the floor of the tunnel. The tunnel in question, was constructed over one hundred years ago, but had been in continuous use until the early 1960’s. The railroad-plaintiff and the defendant-contractor entered into a contract which required the contractor to perform the task of lowering the floor of the tunnel in accordance with the detailed specifications prepared by the railroad’s engineering staff.
On June 6, 1963, after the tunnel floor had been lowered and while the contractor’s workmen were digging a ditch along one wall of the tunnel, a portion of the tunnel collapsed. The railroad contends that the collapse was due to the contractor’s negligence. Damages were stipulated to be One Hundred Thousand *140 Dollars ($100,000.00) and the case was tried before a jury solely on the question of liability. The jury found for the plaintiff-railroad.
The contractor advances three reasons that it contends requires a new trial: (1) the verdict is against the weight of the evidence; (2) the opinion of Dr. Ackenheil, the expert witness, should not have been admitted into evidence and his testimony should have been stricken; (3) the entire general construction contract should not have been permitted to go out with the jury for its use in deliberation since it contained material which was highly prejudicial to the contractor.
The law is clear that the grant or refusal of a new trial is within the sound discretion of the trial court but that discretion is not absolute. Austin v. Ridge, 435 Pa. 1, 255 A. 2d 123 (1969). In passing upon a motion for a new trial, it is necessary to consider the entire record and determine whether the verdict was arbitrary or capricious or that it was against the weight of the evidence, or whether there was clearly error of law or palpable abuse of discretion in the rulings of the court below. Hayes Creek Country Club, Inc. v. Central Penn Quarry S. & C. Co., 407 Pa. 464, 181 A. 2d 301 (1962).
The contractor complains that the hypothetical question put to Dr. Ackenheil, the expert witness, as to causation contained assumptions not in evidence. The expert, of course, cannot base his opinion upon facts not known to him and not supported by the evidence. Collins v. Hand, 431 Pa. 378, 246 A. 2d 398 (1968).
The court below discussed carefully and ably the testimony of this expert and explains the reasons for the admissions of the testimony as well as the exercise of his discretion in refusing a new trial on the first two reasons submitted by the contractor as follows:
*141 “The defendant’s first and second reasons for a new trial are interdependent in that defendant argues in his brief that plaintiff sought to rely on the allegedly incompetent testimony of plaintiff’s expert witness, Dr. Ackenheil, in order to cure the insufficiency of plaintiff’s other evidence pointing to defendant’s negligence. Thus, defendant appears to imply that if plaintiff’s expert’s opinion evidence is competent, i.e., based on facts warranted by the evidence, then sufficient evidence would exist to permit the jury to bring in a verdict for the plaintiff.
“The crux of the defendant’s contention, then, is that the hypothetical question put to Dr. Ackenheil regarding causation (R-199, 200, 201, 202) contained assumptions not in evidence. It is a well established principle that an expert cannot base his opinion upon facts unknown to him and not supported by the evidence. Collins v. Hand, 431 Pa. 378, 246 A. 2d 398 (1968) ; Rennekamp v. Blair, 375 Pa. 620, 101 A. 2d 669 (1954). A review of the record reveals no such infirmity.
“Dr. Ackenheil answered the hypothetical by declaring that the failure of the defendant to restore lost stability to the wall foundation was the cause of the collapse. He stated that the contract specifications called for the excavation of short sections of trench and the installation of steel reinforced concrete therein where there was a possibility of disturbing the sidewall foundation (R-213); that the use of dynamite in excavation did disturb the sidewall foundations (R-212, 213); that given the defendant’s expertise, he should have known that the red shale sidewall foundations would become unstable when exposed to water (R-211, 214); that the defendant should have followed the plan specifications for such contingency by trenching five or ten foot sections and pouring the concrete curb to get back support (R-213, 214) ; and finally, that the defendant’s *142 failure to comply with the requirements of the specifications was the cause of the collapse (R-213, 214).
“Essentially, the question called upon the doctor to state his opinion as to the cause of the collapse based on the following factors: the duties of the defendant as spelled out in the contract; the weather conditions existing prior to and at the time of the collapse and the resulting condition of the tunnel; the composition of the material encountered by the defendant in its excavation of the tunnel floor when the collapse occurred; and, the nature and extent of defendant’s excavation activities in the tunnel. Each of these factors or elements were introduced into evidence, as is borne out by the following analysis:
“1. The Contract
“The contract contains a number of references to the requirement that plaintiff comply with detailed safety procedures regarding support of foundation walls exposed by defendant’s excavations. One such example is plaintiff’s exhibit 16, captioned ‘Construction Details’, which contains the following admonition :
“Note : In carrying out the excavation for the curb walls, care must be taken not to disturb the existing sidewalls of the tunnel or the ground supporting the sidewalls. Where there is underpinning on a possibility of disturbing the sidewall foundations, excavation adjacent thereto shall be removed in small quantities and the underpinning or curb wall built immediately in order to minimize the danger of disturbing the sidewall foundations. (R-148)
“2. The Weather Conditions “The defendant was only partially successful in pumping out water which had seeped into the tunnel as a result of rains which had fallen in the area for several days prior to the collapse (R-69, 131). The water remaining in the tunnel settled in the three hundred foot *143 long, two foot wide by two foot deep, continuous ditch which defendant had been digging adjacent to the existing north wall preparatory to installing the concrete curb required in the specifications (R-68, 69, 83, 93).
“3. Material Encountered
“The material comprising the walls and ceiling of the tunnel was sandstone and the material upon which the walls rested was red shale (R-3'5, 36, 431, 472). A geological survey and an examination of photographs taken inside the tunnel by Dr. Ackenheil revealed that red shale or clay stone was located beneath the portion of the wall that collapsed (R-206).
“4. Defendant’s Activities
“On or about May 14, 1963 the plaintiff removed the rails and ties from the tunnel and defendant began its performance under the contract by removing the ballast (B-ll, 14). Beneath the ballast was the red shale or claystone tunnel floor, fourteen feet wide by over two thousand feet long, two to three feet of which defendant removed by using jackhammers and dynamite (R-8, 34, 35, 75, 174). The defendant then proceeded to dig a two-foot wide by two-foot deep, three hundred-foot long continuous trench adjacent to the north tunnel wall, beginning approximately four hundred feet from the eastern portal and extending westward to the point of the tunnel collapse (R-92, 93, 154, 248, 249).
“Defendant in its brief next argues that the validity of plaintiff’s second premise, namely, if defendant had installed concrete curbing as he dug, the collapse would not have occurred, is based on the doctor’s allegedly infirm response to the following question: ‘Q. In your opinion, doctor, if he had done so would this wall have sheered? A. Assuming proper design, in terms of the retaining structure, which I haven’t investigated, in my opinion it would not have sheered. (Emphasis supplied.) (R-214, 215).’
*144 “Defendant neglects, however, to acknowledge the fact that the retaining structure design was borrowed by defendant’s witness, plaintiff’s Chief Engineer, from the highly successful ‘Milwaukee route’ (R-295): . our concept of the best way to increase the clearances in these tunnels was brought about by the prior experience of the Milwaukee route and their method of lowering roadbeds to increase overhead clearances. Our design concept was almost a carbon copy of this prior experience of the Milwaukee route (R-294)’.
“Thus, although Dr. Ackehheil based his answer on an assumption, the assumed fact was later put in evidence. The propriety of allowing an expert witness to answer a hypothetical question based on assumed facts later introduced in evidence was dealt with by the trial judge of the instant case in Maher v. College Club, 427 Pa. 621, 235 A. 2d 134 (1967). In Maher the trial court observed that the general rule is that the competency of an expert’s opinion is not affected when based on a fact or facts not in record at the time of the giving of the opinion so long as counsel offers to prove the assumed fact or facts by later testimony. The trial court went on to say that the general rule also encompassed the situation where there was no promise on the part of counsel to supply at a later time the testimony supporting the missing fact or facts. While this issue was not discussed by the Supreme Court on appeal, the Supreme Court held that the trial court committed no error of law which controlled the outcome of the case.
“The remainder of defendant’s contentions regarding Dr. Ackenheil’s testimony go to the weight to be given it in the face of seemingly contradictory testimony pertaining to how the collapse occurred. The weight to be given Dr. Ackenheil’s testimony was for the jury’s determination. Wilhelm v. Uttenweiler, 271 Pa. 451, 112 A. 94 (1920); Lesoon v. Yellow Cab Co., *145 195 Pa. Superior Ct. 470, 171 A. 2d 877 (1961); Pryor v. Graff, 179 Pa. Superior Ct. 622, 117 A. 2d 818 (1955).”
The contractor’s contention that the court below erred in permitting the general construction contract to go to the jury for use in its deliberations in that it contained material highly prejudicial to the contractor is also without merit. The contractor relies on the case of Capozi v. Hearst Publishing Co., Inc., 371 Pa. 503, 518, 92 A. 2d 177 (1952). This also was a trespass action in which an agency relationship was denied, the corporate-defendant offered in evidence a written contract covering the relationship with the request that a portion of the contract referring to insurance be kept from the jury’s knowledge. The court below ruled that the contract had to be offered in its entirety. The Supreme Court held that the exclusion of the prejudicial clause was a matter of right and the exclusion of the offer of evidence was harmful error. This then created an exception to the general rule that a document must be offered in its entirety, but as the court below said: “. . . defendant’s reliance on Oapozi is misplaced because in that case the question was whether or not the document with the prejudicial clause should be permitted, whereas here the entire document had already been admitted in evidence by the consent of both parties.”
The contract contained the following disputed clause: “9. Contractors RisJcs. — The work covered by this contract shall be at the risk of the Contractor in every respect and he shall be responsible therefor until it is completed and accepted. This responsibility sba.il include damage to and loss of any material furnished and delivered by the Company for incorporation in the work.”
The clause as set forth above does not contain the insurance problem which is always excludable, so that *146 the problem resolves itself to one of discretion of the court to decide to expunge a portion of the contract already submitted in evidence before it is submitted to the jury. In Brenner v. Lesher, 332 Pa. 522, 528, 2 A. 2d 731 (1938), the Supreme Court stated: “Appellant cites a number of cases to show that it was error to send the exhibit out with the jury, but under them the court below did not err. They state the well settled law that it is within the discretion of the trial court whether documentary evidence, properly admitted (with the exception of depositions or transcripts of testimony), shall be sent out with the jury.” We agree with the court below that the disputed paragraph 9 is relevant both to show the existence of the independent contractual relationship and to spread light on the issue of the control of the area in question. The court below did not abuse its discretion in denying the contractor’s motion for a new trial.
Having decided the question of a new trial, the motion for judgment, non obstante veredicto, is equally without merit. The evidence together with all reasonable inferences must be read in the light most favorable to the verdict winner. This record amply, under such an analysis, permits a finding for the railroad. See, Connolly v. Philadelphia Transportation Co., 420 Pa. 280, 216 A. 2d 60 (1966); Schwegel v. Goldberg, 209 Pa. Superior Ct. 280, 228 A. 2d 405 (1967).
Judgment affirmed.