## Jones v. Jones

*Ralph Schwartz*, for plaintiff.
*Leonard Gordon*, for defendants.

HIRSH, *J.*, June 20, 1977—Plaintiff, Beverly Ann Jones, claiming to be the daughter of John F. Jones, deceased, commenced this action by filing a complaint in assumpsit against defendants Dorothy Byrd Jones and John F. Jones, Jr., co-administrators and trustees of the estate of John F. Jones, deceased, and Marjorie Jones, John J. Jones, Jr. and Edwina Jones, children of said deceased. The pivotal question is whether plaintiff is one of decedent's heirs; i.e., children, and therefore entitled to her one-fourth share of the proceeds from a certain government pension fund and life insurance policy. John F. Jones died intestate on January 30, 1972, leaving surviving him Dorothy Byrd Jones, alleged common-law wife, and three children whose status is not in dispute, and plaintiff claiming to be the fourth legitimate child, heir.

Defendants John J. Jones, Jr., Marjorie Jones Richardson, and Edwina Jones are decedent's children by a prior wife, Alma Jones, now also deceased. Said defendants and Dorothy Byrd Jones

(decedent's alleged common-law wife at the time of his death) had by agreement divided among themselves certain benefits to which decedent's heirs were entitled. They allegedly did not know of the existence of plaintiff, Beverly Ann Jones.

At the trial, Sarah Currence, plaintiff's natural mother, testified that she had cohabited with decedent from 1949 to about 1957. Plaintiff was born in 1955 and her birth certificate names decedent as her father. Decedent left both plaintiff and her mother in 1957. Sarah Currence and plaintiff testified that in 1970, when plaintiff was about 14 years old, decedent visited their home and Sarah introduced decedent to plaintiff, Beverly, as her father. Subsequently, decedent visited with plaintiff on a weekly basis and each acknowledged the existence of a father-daughter relationship. During this period, plaintiff was introduced to others as decedent's daughter. This relationship continued approximately to the time of decedent's death. Additional support for plaintiff's contentions was adduced at trial by the testimony of one Maude Forte, plaintiff's aunt. The testimony of defendants John Jones, Jr. and Marjorie Jones Richardson did not contradict the foregoing.

Plaintiff's burden in the instant case is to prove by a fair preponderance of the trustworthy and satisfying evidence that she is the daughter of decedent, John Forrest Jones: Bokey Estate, 412 Pa. 244, 194 A. 2d 194 (1963); Link's Estate (No. 1), 319 Pa. 513, 180 Atl. 1 (1935); Mays' Estate, 141 Pa. Superior Ct., 15 A. 2d 569 (1940). At trial, credible evidence was offered both by plaintiff's mother (decedent's alleged common-law wife at the time plaintiff was born) and plaintiff's aunt, Maude Forte, in support of the contention that John Forrest

Jones was the father of said plaintiff. Plaintiff's natural mother testified that she was living with decedent when she gave birth to plaintiff, that decedent visited her in the hospital subsequent to the birth, and that they lived together for several years thereafter. Both mother and plaintiff were supported by decedent. Plaintiff's birth certificate clearly names John Forrest Jones as her father. Plaintiff's mother further testified that decedent frequently admitted that plaintiff was his daughter.

In a similar instance, the woman claiming to be a decedent's common-law wife but making no claim against the estate was permitted to testify in support of her daughter who was claiming against the estate: Craig's Estate, 273 Pa. 530, 117 Atl. 221 (1922). In Mays' Estate, supra, the court held that a showing of acknowledgment by a decedent whose name also appeared on a baptismal certificate as the father was sufficient to establish paternity.

Plaintiff having thus developed her relationship to decedent, it was not further required that she prove her legitimacy; but rather, it was for defendants to disprove it: Pickens's Estate, 163 Pa. 14, 29 Atl. 875 (1894); McAnany's Estate, 91 Pa. Superior Ct. 317 (1927). "The presumption and charity of the law are in favor of the legitimacy of every child and whoever seeks to bastardize it must establish its illegitimacy by proof that is clear, direct, satisfactory and irrefragable." McAnany's Estate, supra, at page 321.

In view of the applicable authorities and testimony and evidence in this record, this court finds in favor of plaintiff. Subsequently, defendants filed a motion for a new trial or for judgment n.o.v.

The granting of a new trial rests within the sound discretion of the trial court: Wilson v. Nelson, 437 Pa. 254, 256, 258 A. 2d 657 (1969). However, certain standards have evolved to aid the trial courts in ruling on such motions.

"In passing upon a motion for a new trial, it is necessary to consider the *entire record* and determine whether the verdict was *arbitrary or capricious* or that it was against the weight of the evidence, or whether there was *clearly error of law or palpable abuse of discretion* in the rulings of the court below," Baltimore & Ohio Railroad Company v. Langenfelder & Son, Inc., 222 Pa. Superior Ct. 138, 140, 292 A. 2d 415 (1972). (Emphasis supplied.) See also Burrell v. Philadelphia Elec. Co. 438 Pa. 286, 265 A. 2d 516 (1970); Kubacki v. Metropolitan Life Ins. Co., 193 Pa. Superior Ct. 138, 164 A. 2d 48 (1960).

The credibility of witnesses are given great weight in the trier of fact's verdict. Further, the evidence on record must be viewed in a light most favorable to the verdict: Miller v. Checker Yellow Cab Co., 229 Pa. Superior Ct. 752, 348 A. 2d 128 (1974), and Rost v. Wickenheiser, 229 Pa. Superior Ct. 84, 323 A. 2d 154 (1974).

Upon consideration of the record, and written memoranda of law by both sides, it is hereby ordered and decreed that defendants' motion for a new trial or for judgment n.o.v. is denied.