374 A.2d 1334

**Evelyn GONZALEZ, Administratrix of the Estate of Candido Gonzalez, Deceased,**

**v.**

**UNITED STATES STEEL CORPORATION, a corporation, Appellant,**

**v.**

**EDWARD GRAY CORPORATION.**

**Vincent CARDILLO**

**v.**

**UNITED STATES STEEL CORPORATION, a corporation, Appellant,**

**v.**

**EDWARD GRAY CORPORATION.**

Superior Court of Pennsylvania.

Argued Nov. 24, 1975.

Decided June 29, 1977.

96

William S. Lerach, Pittsburgh, with him Reed, Smith, Shaw & McClay, Pittsburgh, for appellant.

Richard D. Gilardi, Pittsburgh, with him Gilardi & Cooper, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is a consolidated appeal in two trespass actions from the lower court's denial of appellant United States Steel Corporation's motions for judgment n. o. v. and for a new trial.

A jury trial ended in substantial verdicts in favor of plaintiffs against the United States Steel Corporation and the Edward Gray Corporation (Gray has not filed an appeal in this matter).

Candido Gonzalez, deceased, and Vincent Cardillo, were carpenters who worked for the Edward Gray Corporation (Gray Corp.) which was employed by United States Steel to perform certain construction work at the United States Steel Duquesne, Pennsylvania plant.

On December 16, 1970, during the course of the construction work Gonzalez and Cardillo were injured. Gonzalez died as a result of his injuries. Thereafter, a suit was instituted based on the wrongful death and survival statutes by Gonzalez's widow, as Administratrix of her husband's estate against United States Steel. Vincent Cardillo also instituted trespass action against United States Steel for personal injuries he suffered. In both actions, United States Steel joined Gray Corp. as additional defendant, and the two cases were consolidated for trial.

After verdict in favor of plaintiffs and after consideration of appellant United States Steel's arguments based on its motions for judgment n. o. v. or for new trial, the court below, sitting en banc, denied the motions and judgments were entered upon the verdict and this appeal followed.

In consideration of the nature of the appeal, we are required to consider the evidence in the light most favorable to appellee-plaintiffs. *Hargrove v. Frommeyer and Co.*, 229 Pa. 298, 323 A.2d 300 (1974); *Karam v. Pennsylvania Power and Light Co.*, 205 Pa.Super. 318, 208 A.2d 876 (1965).

The construction contract called for Edward Gray Corp. to perform, inter alia, the tearing out of bricks in the No. 4 blast furnace and its four component stoves. The accident in this case occurred in the No. 3 stove, the facts of which are as follows:

A blast furnace stove is cylindrical in shape and from the outside resembles a huge tube of lipstick. The interior of a stove contains two vertical chambers. The largest interior chamber is known as a checker chamber because it is filled with bricks called checkers which are rectangular in shape and have holes in them. The smaller interior chamber is called the combustion chamber or well which is oblong in shape, completely hollow and lined with a layer of brick referred to as the skimwall. The two chambers are approximately 110 feet high.

Appellees introduced expert testimony at trial concerning the normal procedure to be followed in the tearing out of

checkerbrick in the larger checker chamber and the removal or tearing out of that layer of brick referred to as a skimwall in the well or smaller chamber.

First, some of the checkerbricks are removed from the checker chamber and thrown into the well. After the initial tearout of checkerbricks is completed, the checkerbricks remaining in the checker chamber are rodded. The rodding procedure unplugs or cleans out foreign material in the holes of the checkerbricks in the checker chamber. If holes in the checkerbricks cannot be unplugged then those checkerbricks are torn out and thrown into the well. This process of rodding continues until the holes in the remaining checkerbricks are unplugged, after which, and only after which work then commences in the well.

The next step in the procedure is to start work in the well or smaller chamber. This work consists of tearing out the lower portion of the skimwall starting from the floor and since the skimwall runs from top to bottom of the stove, some 100 feet or so, a supporting scaffolding is necessary to support that portion of the skimwall that is to remain after the lower portion of the skimwall is torn out. This scaffolding is referred to as pudlock scaffolding and once the pudlocks are in place the skimwall beneath it is removed or torn out.

The evidence indicated that if any other procedure were to be followed in the tearing out process it would be a departure from normal operations in the removal of bricks from the two chambers. After work in the skimwall had begun, United States Steel decided to remove more checkerbrick from the checker chamber. It was this decision that brought about a departure from the normal procedure. In other words, the tearing out of checkerbricks in the larger chamber after work had begun in the smaller chamber would endanger the scaffolding in the smaller chamber which supported the remaining skimwall that rose to a height of some 80 to 90 feet. The normal process of tossing checkerbrick from the larger chamber into the smaller chamber could no longer be pursued because of the possibility of

these bricks striking the scaffolding and causing a collapse of the skimwall.

In order to avoid this danger, an enclosed wooden chute was constructed and placed in the smaller chamber by means of which checkerbricks from the larger chamber could be delivered to the floor of the smaller well or chamber without endangering the scaffolding or skimwall in the smaller chamber.

The chute was built by Gray Corporation and installed by both Gray Corporation and United States Steel; United States Steel supplied its own men and rigging equipment since Gray Corporation did not have any prior experience with chutes in the tearing out process nor did it have all the equipment necessary to do this particular job.

Prior to the presence of the chute, workmen who removed the brick from the smaller chamber did so from the outside of the smaller well through openings in the well. With the advent of the chute, plaintiff-carpenters were now required to enter the well in order to clean out the brick. Another feature of the chute was the necessity of lowering the chute and removing lower sections of it as the brick removal progressed downward from the top of the larger chamber.

On the day of the fatal accident, brick had accumulated on the floor of the smaller well to a height where it reached the mouth of the chute and required a removal of the lower section of the chute so as to allow more checkerbricks to fall freely. It was during the process of removing this section of the chute that checkerbrick which had clogged in the upper regions of the chute loosened and fell on the two carpenters. The chute also collapsed and fell.

█ In considering a motion for judgment n. o. v. we must consider the evidence and all reasonable inferences that can be drawn from that evidence in the light most favorable to the verdict winner. *Hargrove v. Frommeyer and Co., (et al.)*, 229 Pa.Super. 298, 323 A.2d 300 (1974). The plaintiffs are entitled to all oral evidence supporting the verdict considered and all the rest rejected. *Sorrentino v.*

*Graziano,* 341 Pa. 113, 17 A.2d 373 (1941); *Karam v. Pa. Power and Light Co.,* 205 Pa.Super. 318, 208 A.2d 876 (1965).

The departure from the normal procedure of removing bricks in the two chambers of the stove by the introduction of the chute procedure set up an entirely new set of circumstances with which Gray Corporation was unfamiliar. Gray Corporation's unfamiliarity and inexpertise concerning the installation was buttressed by the fact that United States Steel had to come to its assistance and aid by supplying its own employees and rigging equipment in the process of installing the chute. Under these conditions United States Steel knew or should have known that Gray Corporation was not familiar with the chute operation, had no experience with regard to its safety or safe methods of operation and did not have all the necessary equipment which one more familiar in an operation of this kind would be expected to have.

Plaintiffs' complaints in the instant matter charge United States Steel with negligence in failing to protect the plaintiffs against injury. United States Steel's complaint against Gray Corporation, as additional defendant, alleged that Gray permitted an unreasonably dangerous condition to exist with respect to the work in which the plaintiffs were engaged and to allow them to do such work without adequate safeguards under unreasonably hazardous conditions. In fact, the trial proceeded in accordance with the theory set forth in United States Steel's complaint, that the chute method of disposing of bricks presented a dangerous condition for those working in the area.

Plaintiffs' complaints were identical and alleged, in effect, that plaintiffs' injuries were brought about by the negligence of United States Steel in failing to protect them against unreasonable risk of harm in the work performed by Gray Corporation, in failing to provide proper supervision to the work, in failing to warn plaintiffs of the dangerous conditions under which they worked, all of which protections the plaintiffs were entitled to and which United States Steel were obliged to furnish. *Hargrove v. Frommeyer and Co.,*

supra. In *Jacobini v. IBM Corp.*, 222 Pa.Super. 750, 294 A.2d 756 (1972) our court affirmed per curiam the holding of the lower court (57 D & C 2d 8) finding an employer of an independent contractor liable for harm to the latter's employees.

Thus these allegations of United States Steel's negligence as set forth in plaintiff's complaints suffice to support a cause of action based on negligence and if supported by the evidence at trial, taken in a light most favorable to plaintiffs, entitle plaintiffs to recover, whatever the legal theory on which liability might be based. *Kopka v. Bell Telephone Co. of Pa.*, 371 Pa. 444, 91 A.2d 232 (1952); *Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A.2d 817 (1949). In *Kopka*, supra, the case was tried on the theory of negligence and our Supreme Court upheld the verdict in favor of plaintiffs (damages were modified) on the principal of *quare clausum fregit* where the complaint alleged trespass on the land and the evidence in the trial supported that allegation.

The evidence in this case demonstrated that the working conditions under which plaintiffs worked were unreasonably dangerous. Here was an independent contractor, Gray Corporation, with no experience with the safety measures to be taken with regard to the use of a 80 to 90′ high enclosed somewhat vertical chute in a blast furnace stove. Because of Gray Corporation's inexperience the chute was installed jointly by Gray Corporation and United States Steel, with United States Steel using its employees and rigging equipment in installing the chute. It was an operation which both Gray Corporation and United States Steel should have recognized as being fraught with danger of harm if special precautions were not taken. Furthermore, this condition, that is the construction of the chute and the necessity of having men work in the well, only became necessary because of the departure from the normal procedure of removing bricks. Under all the surrounding circumstances of the installation of the chute, both Gray Corporation and United States Steel knew or should have known that special precautions were necessary to be followed in order to protect workmen in the well and thus the responsi-

bility of providing safety precautions fell equally upon United States Steel and Gray Corporation. Comment a of Section 411 of the Restatement of Torts Second defines a competent and careful contractor as one who "possesses the knowledge, skill, experience and available equipment which a reasonable man would realize a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the careful characteristics which are equally necessary." According to this definition Gray Corporation lacked the essential qualifications of a competent and careful contractor.

This case was tried primarily under the principles set forth in the Restatement of Torts Second, Sections 410 through 429, Sections 410, 413, 416 and 427 in particular.[1]

1. "§ 410. Contractor's Conduct in Obedience to Employer's Directions.

The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself."

"§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

"§ 416. Work Dangerous in Absence of Special Precautions.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"§ 427. Negligence as to Danger Inherent in the Work.

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he

It may be well to point out here that Sections 410 through 415 of the Restatement treat of an employer's own negligence in the hiring of an independent contractor when the work to be done creates a peculiarly unreasonable risk of harm to others and Sections 416 through 429 treat of an employer's liability for the negligence of his independent contractor under certain circumstances when work creates a peculiarly unreasonable risk of harm to others. *Hargrove v. Frommeyer & Co.*, supra; *Lasch v. Cohn*, 130 Pa.Super. 161, 196 A. 581 (1938).

Considering all the evidence in this case the jury could have found in favor of plaintiffs under any of the provisions of Sections 410, 413, 416 and 427. The lower court's charge under Section 410 was supported under plaintiff's theory that the departure from the normal procedure of brick removal gave rise to a peculiarly unreasonable risk of harm to others, a condition about which United States Steel knew or should have known, thus compelling an equal duty upon it for taking special precautions to protect others against physical harm.

The lower court's charge under Section 413 was supported by evidence which showed United States Steel failed to take the necessary *special* precautions where a peculiarly unreasonable risk of harm to others existed as it did in this case. The jury could reasonably have found that with the existence of a dangerous condition at plaintiff's work site United States Steel was under a duty to take special precautions such as making certain, by proper directions, that no workmen be permitted in the well until it was certain that the chute was clear of clogged brick. The fact that Gray failed in its duty does not excuse United States Steel from its own failure to see special precautions were taken.

United States Steel contends that it has no liability in this case because the contract contains an exculpatory

contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

provision which protects it against any injuries to others caused in the work of Gray Corporation. However, one reasonable reading of that exculpatory clause indicates that United States Steel protected itself only against negligence which might arise under the ordinary and normal work conditions. But where a peculiarly unreasonable risk of harm exists United States Steel cannot escape responsibility unless it takes *special precautions*, as provided in the Restatement of Torts, Second, as applicable in this case, to safeguard plaintiffs against harm. This it failed to do. In the first place the contract did not contemplate the construction of the chute; the dangerous condition arose after the work began and was one which United States Steel should have been cognizant of and ready to provide special precautions for.

The cases which United States Steel cites are inapplicable because they treat of the principle holding the employer of an independent contractor liable or not liable on the issue of whether the employer had control of the work. *Brletich v. United States Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971). (The court found the employer had no control); *Tropea v. Shell Oil Company*, 307 F.2d 757 (2d Cir. 1962); the cleaning of fuel tanks which was not an inherently dangerous activity; *Funari v. Valentino*, 435 Pa. 363, 257 A.2d 259 (1969) (Employer had no control over a faulty torch tank hose); *Texaco, Inc. v. Roscoe*, 290 F.2d 389 (5th Cir. 1961) (Employer had no liability where it turned complete possession of work site over to employer and where employer retained no control over the work); *Celender et al. v. All'y Co. Sanitary Authority*, 208 Pa.Super. 390, 222 A.2d 461 (Allocatur refused). Employer had no control over operation of an underground vault where an explosion occurred.

This case has nothing to do with direct control of work by United States Steel. It is merely based on United States Steel's failure to take special precautions to protect plaintiffs against harm under work conditions which were dangerous and presented the likelihood of a peculiarly unreasonable risk of harm to plaintiffs.

■ Normally, an employer of an independent contractor is not responsible for negligent acts or omissions of the contractor or its employees. *McDonough v. United States Steel Corp. (et al.)*, 228 Pa.Super. 268, 324 A.2d 542 (1974).

However, exceptions to this general rule of non-liability are present in this case, both upon the negligence of United States Steel under Section 410 and upon the negligence of the independent contractor where work presents a condition of peculiarly unreasonable risk of harm to others as set forth in Section 413.

United States Steel's motion for n. o. v. is denied.

■ As to United States Steel's motion for a new trial we have an altogether different matter in considering the omissions of the court's charge on Section 413. Section 413 provides:

"§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

The court omitted in its instruction to the jury the provisions set forth in Section 413(a) and comment c to that Section which provides that the duty imposed upon United States Steel by Section 413 could be satisfied by:

". . . providing for the taking of the necessary precautions in the contract under which the work was done by a carefully chosen contractor, or employing another independent contractor to take the precautions or if he takes any other of these courses, by exercising reasonable care by providing them himself."

United States Steel requested a total charge in Section 413. The law is clear that the grant or refusal of a new trial is within the sound discretion of the trial court but that discretion is not absolute. *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123 (1969). In passing upon a motion for a new trial, it is necessary to consider the entire record to determine whether the verdict was arbitrary or capricious or whether it was against the weight of the evidence, or whether there was clearly error of law or palpable abuse of discretion in the rulings of the court below. *B & O Railroad Co. v. Langenfelder and Son, I.,* 222 Pa.Super. 138, 292 A.2d 415 (1972). The omissions in the lower court's charge eviscerated the United States Steel's contention that it came within all the necessary precautions required in Section 413; that in the contract Gray Corporation was to take all the necessary precautions in exercising care against physical harm, and that Gray Corporation was a competent and experienced contractor who was fully cognizant of and fully responsible for what occurred in the stove. While it is true that the exculpatory clause in the contract did not insulate United States Steel from liability as a matter of law, it nevertheless was relevant in determining the duty of care that United States Steel owed to the plaintiffs. By not charging the jury on Section 413(a) and comment c, the court removed an issue from the case which should have been left to the jury. This was a question of fact as much as it was an interpretation of Section 413 and constituted a matter only for the jury to determine. We therefore hold that the lower court erred in its charge and grant the United States Steel's motions for new trial and so order.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I believe that the lower court correctly decided that the exculpatory clause in appellant's contract with Gray did not satisfy the requirements of subsection (a), § 413 of the Restatement, and therefore that the subsection was properly not given to the jury.

Subsection (a) states that an employer may be relieved of liability for harm in a § 413 case if he provides in the contract with an independent contractor that the contractor shall take "such precautions." "Such precautions" refers to "special precautions" required to prevent physical harm due to "a peculiar unreasonable risk."

Here, the exculpatory clause read:

16. The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Contractor. Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. Contractor shall confine his employees and all other persons who come onto Owner's premises at Contractor's request or for reasons relating to this contract and his equipment to that portion of Owner's premises where the work under this contract is to be performed or to roads leading to and from such work sites, and to any other area which Owner may permit Contractor to use.

Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions on Owner's premises which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether such machinery, equipment or facilities are the property of or are being operated by, the Contractor, his subcontractors, the Owner or other persons.

It is understood that if employees of Owner shall perform any acts for the purpose of discharging the responsibility undertaken by the Contractor in this Article 16,

whether requested to perform such acts by the Contractor or not, such employees of the Owner while performing such acts shall be considered the agents and servants of the Contractor subject to the exclusive control of the Contractor.

This clause does not provide for special precautions in the situation in this case—the change in the usual tear-out procedure and the use of the chute—for two reasons. First (as the majority notes), the peculiar risk arose after the contract was drawn and signed. § 413 requires that in such a circumstance the employer take further action; * if he wishes to rely on subsection (a), that further action would be an amendment of the contract. Second, the clause does not specifically refer to special precautions against specific peculiar risks. I believe subsection (a) contemplates such specifics and cannot be satisfied by the language, "[c]ontractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees . . .." The correctness of this belief, I suggest, is confirmed by the illustrations under § 416 (which treats the same kind of "peculiar risk" as § 413; see § 416, Comment b); these illustrations describe clauses that state the special precautions that are to be taken.

To give a charge on subsection (a) and to give the jury the exculpatory clause would have been to ask the jury to interpret the clause. In my view, this would have been clear error, for

[w]here the meaning of a written contract is clear and unambiguous, its interpretation and construction are for the court, not the jury. *Cerceo v. DeMarco*, 391 Pa. 157, 137 A.2d 296 (1958); *Filler Products, Inc. v. Corriere*, 381 Pa. 394, 113 A.2d 219 (1955). It is our conclusion that the court below did not err in construing the contract. Sub-

---

\* *See* Comment *d*:

> Although the employer at the time he lets the contract has no reason to anticipate that conditions will arise which require special precautions to be taken, if in fact such conditions do arise and he knows or should know of them, he is then required to act in the manner required by the rule stated in this Section.

mitting it to the jury for their interpretation, as appellants requested, would have been error.

*Hewes v. McWilliams*, 412 Pa. 270, 275, 194 A.2d 339, 342 (1963).

I would affirm.