# APPEAL OF A. M. MINTS.
[Sprout v. Mints.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF SULLIVAN COUNTY, IN EQUITY.

Argued March 22, 1889—Decided October 7, 1889.
[To be reported.]

(a) Mints, the owner of a saw-mill, contracted with Sprout, the owner of timber land, to cut logs, stock and saw " any or all varieties of timber " on the lands, the flooring to be planed and matched before piling, but to be steamed before planing and matching, to drive out the sap and facilitate seasoning, the steam-house and pipes therefor to be furnished by Sprout; who was to have direction of all the details of the work.

(b) Sprout erected no steam-house to steam the lumber. Differences arising as to the mutual rights of the parties, Sprout served on Mints an " order " (a) not to cut or injure any standing timber on the prem-

### Statement of Facts.

ises; (b) to cut up only such logs as would make inch boards for flooring of two best grades, Nos. 1 and 2; and (c) notifying Mints that for the present the steaming of lumber was to be dispensed with.

1. In such case, Mints did not agree and for that reason was not bound to plane and match the lumber suitable for flooring until it was steamed, and Sprout by his "order" could not relieve himself from the duty of supplying the steam-house and pipes therefor, under the terms of the contract, without the consent of Mints.

2. The "order" directing that no standing timber should be felled, and that Mints should cut only such logs as would make inch boards suitable for flooring of the two best grades, Nos. 1 and 2, was not the exercise of a power to direct details, but was an assumption of the right to suspend the manufacture itself.

3. Sprout being in default in not providing the steam-house, etc., by which the steaming could be performed, had no equity upon which to entitle him to an injunction restraining Mints from cutting and manufacturing any lumber except in accordance with said "order," and his bill therefor should be dismissed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 2 January Term 1889, Sup. Ct.; court below, No. 2 February Term 1886, C. P., in Equity.

To the number and term of the court below, A. R. Sprout filed a bill in equity, against A. M. Mints, averring in substance as follows:

That being the owner of certain timber lands in Sullivan county, on January 21, 1885, he entered into a written contract with the defendant, which provided:

"That the said A. M. Mints agrees to cut timber and peel bark and pile the same by the main roadside, east side of the tract, all in good saving order, for $2 per cord of 2,240 lbs.; also to cut logs, stock and saw into different kinds of lumber any or all varieties of timber on lands in Sullivan county, and pile the same by the main roadside in good order for seasoning, for $4.25 per thousand, and to plane and match flooring before piling, for $2 per thousand, the same to be steamed sufficiently to drive out the natural sap and facilitate seasoning before planing and matching; for the surface planing other boards, $1 per thousand. And it is agreed that A. R. Sprout reserves to himself the right to choose and direct the cutting, peeling, stocking, sawing, slitting, steaming, planing, match-

Statement of Facts.

ing, piling, covering, and in fact all matters in detail concerning the work, at the times of beginning and progress of the work, in order that the best interests of all parties may be subserved. And it is agreed that when piles of said lumber shall from time to time so be finished and covered, the said A. R. Sprout shall informally inspect the same, which if apparently answering the contract, shall pay therefor two thirds of the above stated price, and thereafter, upon a formal inspection, say within one year thereafter, the remainder of the above stated prices shall be paid in full. And it is agreed that all rejected lumber of any kind, at the final inspection, shall be taken by A. M. Mints for his pay in full for his services and manufacturing the same and no charge therefor.

" And it is also agreed that said A. M. Mints is to have the privilege of using second quality of lumber for all needful purposes for building dwelling houses, tramways, mill floors and roofs, being careful not to make use of any of the valuable kinds for market. Also it is agreed that A. R. Sprout is to do the work of putting up the steam-house and furnish the steam pipes for conducting the steam thereto.

" In witness whereof," etc.

That the defendant entered upon the lands with a ten horse-power mill, but no planer, and orders were given him to plant the mill near the main road, cut timber in a certain place, and to peel bark, with $1 per cord extra, if delivered at Stevens' tannery; that defendant disobeyed the orders given by not planting the mill where he was ordered, by cutting and sawing logs not of the best quality, by applying the proceeds to his private use, and by continuing in possession of the land and in manufacturing lumber.

That on December 15, 1885, an order was given to the defendant which was as follows:

" ORDER."

" To A. Mints in agreement January 21, 1885: .

" The following is respectfully submitted, of which you will take notice, in lieu of and countermanding all previous orders for cutting timber into logs, peeling bark, sawing the same into lumber for me.

" You are hereby ordered:

"1. You are not to cut or injure any standing timber on the premises without further orders from me.

Statement of Facts.

"2. You are required to cut only such logs as will make inch boards suitable for working into flooring of two best grades, No. 1 and No. 2.

"3. You are required to prepare the same for market by slitting the same into widths as follows: . . . . .

"4. You are required to groove one edge of all boards with groove . . . . . and work a tongue on the opposite edge . . . . leaving a shoulder . . . . .

"5. You are required to so slit all boards of your sawing for me in such a way as to make the best of merchantable stuff, and to cast away and destroy any refuse lumber or offal, except that which may be required for making steam with which to do work.

"6. You are required to keep separate and pile on sills at main road in field, at least eight inches from the ground, sloping one foot in sixteen, each width by itself and also each length by itself, and to cover the same with at least two thicknesses of boards, so that sun and rain will not affect or damage the same.

"7. You are required to do all the above specified work in a good workmanlike manner and to use proper means to protect the piles during the time of setting in said field.

"8. You are forbidden to manufacture into lumber of any kind than above spoken of in this order, also to cut or manufacture anything at all from timber on ground north side of road leading from mill to main road, and especially where timber has been cut contrary to orders.

"9. You are hereby notified that in so far as steaming lumber spoken of in former articles, the same for the present is to be dispensed with. This order to remain in full force until others are by me given.          A. R. SPROUT."

Averring further that the defendant refused to observe the directions of said order, the bill prayed: (1) For an injunction restraining defendant "from the cutting and manufacturing and selling, disposing of, or taking away of any lumber, except in accordance with the notice of December 15, 1885, and the terms of the agreement subsisting between said defendant and your orator;" (2) For an accounting to the plaintiff for all the lumber, logs, bark and other material taken or sold by him and for all damages done to the premises; (3) For other relief.

On the filing of the bill, with bond, a preliminary injunction

was awarded and served, the terms thereof being as quoted in the first prayer of the bill.

The defendant filed an answer, which, admitting certain averments of the bill, denied any disobedience of the plaintiff's orders which were consistent with the provisions of the contract, and averred that the order of December 15, 1885, was subversive of the contract, ruinous to defendant's interests thereunder, unreasonable and unjust; that the defendant had already felled and peeled and cut a large number of logs which would not make flooring, but would make other good merchantable lumber; that he had a right to saw those logs into such lumber, under the plaintiff's directions, and that an order to make only Nos. 1 and 2 flooring was equivalent to an order to stop work under the contract.

On February 23, 1886, the defendant moved that the preliminary injunction be dissolved, or, that the same be so modified as to permit the defendant to manufacture such logs or parts of logs, as would not make flooring, into other suitable lumber. Both motions were refused.

The cause being then put at issue, *Mr. John H. Cronin* was appointed examiner and master, and on February 27, 1888, filed a report finding upon the facts in evidence in the case as follows:

" That the writing of January 21, 1885, is a contract; that Mints is a contractor under it and not to be considered in the light of a hired man or employee of Sprout, to be ordered at will, without reference to the contract.

" That the reservation in the contract to Sprout 'to order all matters in detail,' must be given according to the letter and spirit of the contract, and according to the spirit, custom and order of the work contemplated in the contract.

" That any order to Mints under the reservations in the contract, unreasonable, inconsistent with the work, or equivalent to suspending the work, or of putting Mints to unreasonable expenses not consistent with the spirit, custom and regular order of such work contemplated in the contract, are not binding upon Mints.

" That at the time of service of the order of December 15, 1885, and of the injunction in this case, Mints was engaged in

sawing on the order of September 21, 1885; that this was a reasonable order under the contract, and subserved the interests of the parties, and that the order of December 15, 1885, was not a reasonable order under the contract of January 21, 1885, and was subversive of Mints's interest, and he was justified in disobeying it.

" That by a reasonable interpretation of the contract of January 21, 1885, Mints has the right to manufacture all the lumber, including all .the different varieties, on land in Sullivan county described in the contract, so long as he obeys the reasonable orders of Sprout given in the letter and spirit of the contract and that Sprout's order of December 15, 1885, is subversive of the rights of Mints and the order is not binding on him."

Upon the foregoing findings, the master recommended a decree that the injunction theretofore granted be dissolved and that the plaintiff's bill be dismissed with costs.

To the said report thirty-seven exceptions were filed by the plaintiff, which being overruled by the master were renewed in court. These exceptions having been argued, the court, SITTSER, P. J., on April 28, 1888, filed an opinion sustaining them, and signed the following decree:

1. That the exceptions to the master's report are sustained as set forth in the foregoing opinion, and said report is set aside, and the preliminary injunction heretofore granted is continued and made perpetual in the following modified form, viz.:

The defendant, his agents, servants, employees or workmen are enjoined and restrained from cutting any standing timber belonging to the plaintiff, until the defendant satisfies the court, or the plaintiff, that the timber so cut will be manufactured according to the reasonable directions of plaintiff.

The defendant, his agents, servants, employees or workmen are hereby enjoined and restrained from manufacturing the logs cut by the defendant or his employees, that will make flooring, into any other kind of lumber, or the portion of said logs that will make flooring, into any other kind of lumber. This however not to prevent the defendant from manufacturing the portion of the logs which will not make flooring, into other kinds of lumber, or the manufacture of such logs that

have been cut according to the directions of the plaintiff, as will not make flooring, into other kinds of lumber, upon bills furnished by the plaintiff, or if plaintiff neglects to furnish such bills upon request within a reasonable time, then into the most suitable and salable kinds of merchantable lumber as such logs or parts of logs will make.

The defendant, his agents, servants, employees or workmen are hereby enjoined and restrained from selling, transferring or in any manner disposing of the lumber manufactured by the defendant belonging to the plaintiff.

2. That the defendant pay the costs including the examiner's and master's fees and the plaintiff's bill for his witnesses.

The foregoing decree having been entered, the defendant took this appeal, assigning as error, specifically, the sustaining of the plaintiff's several exceptions, and the entering of said decree.

*Mr. Ellery P. Ingham* (with him *Mr. Thos. J. Ingham*), for the appellant.

*Mr. H. T. Ames* (with him *Mr. E. M. Dunham*), for the appellee.

OPINION, MR. JUSTICE WILLIAMS:

This litigation grows out of a written contract for the manufacture of lumber. The questions raised relate to the extent and manner of the performance, and are properly within the jurisdiction of a court of law. The facts as found by the master or as gathered from the bill, answer and proofs are these:

Sprout was the owner of about three hundred acres of timber land in Sullivan county. Mints was the owner of a portable saw-mill, seeking employment for it and for himself. They entered into an agreement in writing on January 21, 1885, by which Mints agreed to remove his mill to Sprout's timber land, to cut and peel the hemlock and pile the bark along the main road, and to cut logs, stock and saw "any or all varieties of timber," and pile the sawed lumber at the side of the main road. He was to receive $2 per cord for peeling and piling the bark and $4.25 per thousand feet for the cutting, stocking, sawing

and piling of lumber. The flooring that might be made was to be planed and matched before piling at the road and $2 per thousand feet paid in addition therefor; but the contract also provided that it was to be steamed sufficiently to drive out the natural sap and facilitate seasoning, "before planing and matching," and that the steam-house and pipes therefor were to be provided by Sprout. It was also provided that Sprout should direct "the cutting, peeling, stocking, sawing, slitting, steaming, planing, matching, piling, and in fact all matters in detail concerning the work, at the times of beginning and progress of the work, in order that the best interests of all parties may be subserved."

Mints erected the mill upon the land and began work under his contract, but Sprout erected no steam-house to steam the flooring, and Mints put no planer in his mill to plane it. Differences arose as to the mutual rights and obligations of the parties, and in December, 1885, Sprout prepared and served on Mints what is appropriately called an "order," which contained nine distinct directions. The first was, "not to cut or injure any standing timber on the premises without further orders from me." The second required Mints "to cut only such logs as will make inch boards suitable for working into flooring of two best grades No. 1 and No. 2." Then follow seven other directions relating to the manner of sawing, splitting, planing, matching, and piling the flooring, the last of which is, "you are hereby notified that in so far as steaming lumber spoken of in former articles, the same for the present is to be dispensed with. This order to remain in full force until others are given by me." Mints continued sawing up his stock, and, as he alleges, into the best and most salable lumber it would make, but did not make any planed and matched flooring, for the reason, as it is fair to presume, that Sprout had not erected the steam-house, and the contract did not require him to plane and match the flooring until after it had been steamed in a steam-house to be provided by Sprout. He also treated the directions Nos. 1 and 2 in the order as not binding on him, because not calculated or intended to subserve "the best interests of all parties," but as subversive of his contract rights.

Because Sprout did not obey the order of December, 1885, this bill was filed and the court was asked to issue an injunc-

tion "restraining the said A. M. Mints from the cutting and manufacturing, etc. except in accordance with the terms of the notice of December 15, 1885, and the terms of the agreement." A preliminary injunction was issued, following the words of the prayer for relief quoted above, and remained in force until the final hearing in April, 1888, when it was so far modified as "not to prevent the defendant from manufacturing the portion of the logs which will not make flooring, into other kinds of lumber, or the manufacture of such logs that have been cut according to the directions of the plaintiff, as will not make flooring, into other kinds of lumber, upon bills furnished by the plaintiff, or if plaintiff neglects to furnish such bills on request within a reasonable time, then into the most suitable and salable kinds of merchantable lumber as such logs or parts of logs will make. As thus modified it was made perpetual.

The master's findings though wanting in orderly arrangement are, in effect, that Mints manufactured the lumber in accordance with the agreement, and he recommended that the bill be dismissed and the injunction dissolved. The learned judge overruled the master on two points; first, as to the effect of the written contract, and next, as to the character of the " order " of December, 1885. As to the contract, he says : " Mr. Sprout was to put up the steam-house and furnish the steam pipes for conducting the steam thereto. He has not done this. But if he chooses to have his flooring made without being first steamed, we do not see how Mr. Mints can object, so long as he gets the stipulated price for the work." The most obvious reason for objection is that it is not in accordance with the contract. He did not agree and for that reason he is not bound to plane and match the lumber, until it has been " steamed sufficiently to drive out the natural sap and facilitate seasoning." Sprout cannot by his " order " relieve himself from his contract obligations, any more than Mints can relieve himself without the consent of Sprout. It requires the assent of both parties to modify, as well as to make a contract. It may be that the process of planing and matching is more easily and expeditiously managed after steaming than before, so that the order dispensing with the steaming process, while reducing the cost to Sprout, would have increased the cost to Mints of producing the flooring. This was an additional rea-

son for refusing to recognize the "order," as a valid exercise of the power reserved in the contract to direct the process of manufacture.

The question about the extent of the release of Mints from the duty to plane and match, is of secondary consequence in view of the fact that the contract did not impose the duty, until the preliminary process of steaming in a steam-house to be provided by Sprout, had been completed. The master found an express release as to all the lumber. The court thought it was limited to the first fifty thousand feet. But no release was necessary until the obligation to plane and match had attached under the provisions of the contract. This could not happen till the steam-house was provided, and the duty to provide it was on Sprout.

As to the character of the order of December, 1885, the learned judge said: "So far as the order requires the defendant to manufacture flooring, we have already expressed our opinion that it is not subversive of the contract, but strictly in accordance with its provisions; and if compliance with it be ruinous to the defendant, it was his own folly to make such a contract." Is this correct? The order directed that no standing timber should be cut without further orders from Sprout. The contract bound Mints to cut and remove all the timber. This was not the exercise of the power to direct the details of the process of manufacture, but an assumption of the right to suspend the process itself. It was not facilitating but subverting the purposes of the agreement, and suspending indefinitely the work under it. Equally objectionable is the direction in the order to "cut only such logs as will make inch boards suitable for working into flooring of two best grades No. 1 and No. 2." The contract contemplated the cutting and manufacture of all the logs. Such as would make flooring Sprout had the right to insist should be so used, but how and from what part of the agreement does he derive the right to say that other logs that could be profitably worked into other varieties of lumber, should remain unsawed? We cannot find it in the contract or in the evidence. So far from being "strictly in accordance with" the terms of the contract, we think the notice was, in the two particulars now considered, subversive of the purposes of the contract and unauthorized by the reser-

vation in it of the power to direct as to the details of the work to be done under it.

We cannot agree, therefore, with the learned judge in his views of the rights of the parties under their contract, or under the order of December, 1885, but we think with the master that no ground for an injunction appears in the evidence. The plaintiff came into a court of equity to complain that the defendant did not obey his order to make, plane and match flooring in accordance with a written contract. But the evidence shows that he was in default in not providing the steam-house in which the preliminary process of steaming could be conducted. He assumed the right to waive his own non-performance and dispense with the steaming process, but this was for the other side to do and not for him. Having reserved the power to direct *how* the work should be done by Mints, he assumed the power to arrest or suspend it at his will and until it should please him to allow it to be resumed; and, because his jobber did not recognize and obey these unauthorized directions, he comes into equity and asks a chancellor to compel him to obey. We decline to do so.

There is nothing in this complaint of breach of contract that cannot be settled at law. There is certainly nothing in the case as disclosed by the evidence to move the conscience of a chancellor. The plaintiff has no equity on which his prayer for an injunction can rest, or which entitles him to the ear of a chancellor for any purpose, and his bill must be dismissed. When he has erected his steam-house, it will become the duty of the defendant to use it, and to plane and match the steamed flooring; but until then no ground for complaint on that account exists. He who seeks to compel performance by others must show his right to ask it by showing his own performance of all that is preliminary, and his readiness to perform what is coincident to that which he asks done by others.

> The decree in this case is reversed, the injunction dissolved, and the plaintiff's bill dismissed; the record costs including the fees of the master to be paid by the appellee; each party to pay his own costs.