DeChicchis et al., Appellants, *v.* Elizabeth Borough School District.

Argued May 2, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Glenn C. Jones,* for appellants.

*Robert B. Greer,* for appellee.

OPINION BY HIRT, J., October 4, 1940:

Plaintiffs were the low bidders on the general work of constructing an addition to a high school building in the School District of the Borough of Elizabeth and a contract was entered into by them with the defendant determining the scope of the work. The dispute in this case relates to whether plaintiffs were obliged to supply the finish hardware. When the question was raised during the course of construction, they bought the finish hardware at a cost of $959.50 and furnished it under protest. Conceding that it was for them to install this hardware under their contract, plaintiffs contend that they were not required to supply it, and in this action sought to recover its cost as extra material furnished. At the trial, the lower court directed a verdict in favor of plaintiffs. The entry of judgment for the defendant n. o. v., by the court in banc, is the sole error assigned.

Plaintiffs rest their right to recover on the following provision of the contract which they contend relieves them from furnishing the finish hardware: "The general contractor shall be required to furnish all rough hardware required for the building ...... none of which is included in the finish hardware list, and he shall install all finish hardware."

Standing alone and read without reference to other language of the contract, the above provision requiring the contractor to furnish the rough hardware and merely to install the finish hardware, at most, can raise only an inference that the finish hardware was intended to be supplied by defendant. But in construing a contract, the language must be interpreted so that the agreement as a whole may be carried into effect. *McMillin v. Titus,* 222 Pa. 500, 72 A. 240. And elsewhere in the contract, there is positive language

definitely rebutting any such inference. Plaintiffs were awarded the general work and their contract provided "The contractor ...... shall furnish *all material, labor, tools,* ...... etc. *necessary and shall do all work required for the full and complete erection of the addition* and making some changes to portions of the present building, *excepting only such items as may hereinafter be reserved and let under other contracts."* The only parts of the work reserved and let under other contracts were the plumbing, heating and electrical work, a usual division of the work on the construction of buildings of this nature. It was also agreed that the specifications and general conditions "are hereby incorporated into and made parts of the contract to the same extent as if they were herein fully set forth." The specifications contain an itemized list of all finish hardware, and this is a list of the identical hardware which plaintiffs furnished under protest. Under the heading "Drawings and Specifications," the contract specifically imposes upon plaintiffs the obligation to furnish the finish hardware, in the following language: "The drawings and this specification are intended to co-operate, and the *finishing hardware* for work shown on the drawings and not mentioned in this specification, or vice versa, and *material reasonably necessary* to carry out details of the work as specified on the drawings, shall be supplied as if shown and specified."

The specific obligations of the contract are emphasized by its general provisions, among them: "This contractor shall furnish *all material* required for the work comprehended by the general drawings and this specifications ...... without extra expense or charge to the Owner in excess of the contract price," and "should workmanship or materials be wanting which are not directly denoted in the plans or specifications but are *nevertheless necessary for the carrying out of the obvious intention thereof,* the contractor shall

understand the same to be implied and shall provide for it in his tender as fully as if it had been particularly described or delineated." (All italics supplied) There are other provisions to the same effect. "Inferences ......, are not within the rule as to ambiguity [that a contract must be construed most strongly against the party who drew it] and those which would overthrow the positive language of a contract, as the present one would, are never permissible especially where, as here, the meaning of the language is clear, and does not require the drawing of any inferences to disclose its plain intent": *Com. ex rel. v. Nelson-Pedley C. Co.*, 303 Pa. 174, 154 A. 383.

From the general provisions of the contract imposing the obligation on plaintiffs to furnish the labor and material necessary for the full completion of the addition to the building including "all incidental work," it is obvious that the contractor was bound to supply the finish hardware. The building would not be complete without it. But the provision of the specifications, which was made a part of the contract, requiring the contractor to furnish this hardware and containing an itemized list of it, is conclusive of the question.

Since plaintiffs, clearly, were bound to furnish this material under their contract, it is not necessary for us to consider the validating Act of March 30, 1937, P. L. 113, 24 PS 337a, as affecting the mandate (*Com. ex rel. v. Jones*, 283 Pa. 582, 129 A. 635) of the Act of May 18, 1911, P. L. 309 art. VI, §617, as amended, 24 PS 763, which imposes liability on a school district of this class only "after due public notice has been given asking for competitive bids," where the value of the labor or materials furnished, exceeds $300.

Judgment affirmed.