592 A.2d 72

**WEST DEVELOPMENT GROUP, LTD., Appellant,**

**v.**

**HORIZON FINANCIAL, F.A. and Patrick M. McKernan and Samuel E. Colavita, Appellees.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Filed May 31, 1991.

Reargument Denied Aug. 8, 1991.

David H. Moskowitz, Devon, for appellant.

Steven H. Sailer, Newtown, for Horizon Financial, appellees.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

OLSZEWSKI, Judge:

This dispute arises out of a loan commitment agreement between West Development Group, Ltd. (West) and Horizon

Financial, F.A. (Horizon), whereby Horizon agreed to loan West funds for the purchase of certain property. At closing, Horizon would not approve the form of the documents creating a junior mortgage. The owners of the property, Samuel E. Colavita and Patrick M. McKernan, walked out of the closing when West was unable to pay the purchase price. The property was sold the next business day to another party.

West filed suit against Horizon alleging breach of contract, Horizon joined Colavita and McKernan as additional defendants. West's motion for partial summary judgment was denied. At trial, Horizon's motion for a compulsory non-suit was granted at the close of West's case. Timely post-trial motions were filed and denied, this appeal followed.

The factual history of this case can be summarized as follows: On April 15, 1986, West entered into an agreement of sale for the purchase from McKernan and Colavita of a 52.7–acre tract of land in Perkasie Borough, Bucks County, Pennsylvania. (Trial court opinion at 3.) Said agreement of sale divided the parcel of ground into two separate phases, I and II. (*Id.*) The purchase price was $369,000 for Phase I and $532,875 for Phase II. (*Id.*) The agreement provided that the price for Phase I was to be paid by West to McKernan and Colavita at settlement, originally scheduled for July 22, 1986. (*Id.*) Payment for Phase II was to be paid at a second settlement one year later, on or before July 22, 1987. (*Id.*) The original agreement also provided in paragraph 3(c) that: "Time shall be of the essence under this settlement paragraph and this Agreement." (*Id.*)

In June 1986, West entered into a second supplemental agreement with McKernan and Colavita, which contained the following provision:

22. Paragraph 3(b) is hereby revised to read as follows: (b) the purchase price for Phase II ... shall be paid at settlement by way of a one (1) year note, without interest, executed by BUYER [West] to SELLER [McKernan and Colavita], secured by a mortgage on the land contained in

Phase II, which shall be a second lien behind the first lien for the ground acquisition, site improvement and construction loan and the personal guarantees of Rudolf M. Haas and David Shubin, the principal officers, directors and shareholders of Buyer.

(*Id.* at 4.)

On August 27, 1986, Horizon issued a loan commitment letter to West agreeing to lend West $3,900,000 for the purchase of the land. (*Id.* at 5.) The loan commitment letter contained detailed special conditions requiring that the contemplated loan be secured by a first mortgage to Horizon, and that any "junior financing" secured, or to be secured, by an interest in the property, was prohibited unless specifically agreed to in writing by Horizon. (*Id.*)

Section 1.2 of the loan commitment letter provided:

1.2 The purchase money mortgage [to McKernan and Colavita] detailed in Paragraph 22 of the agreement of sale ... shall be permitted provided said mortgage is subordinate in lien priority to the mortgage [to Horizon] contemplated herein. No further junior financing shall be permitted, and the purchase money mortgage and note shall be delivered to [Horizon], for approval by [Horizon's] counsel prior to the loan closing. If [Horizon's] counsel does not approve said mortgage and note, [Horizon] may, at [Horizon's] sole option, withdraw this commitment or accept changes in said mortgage and note from the purchase money mortgage.

(*Id.* at 5–6.) West promptly accepted the loan commitment letter and agreed that final closing would occur within thirty days of acceptance (by September 26, 1986). (*Id.*)

Settlement having been delayed, McKernan and Colavita sent West the following letter on September 5, 1986:

This letter is to serve as formal notice that unless settlement takes place on September 12, 1986, the sellers will declare the Agreement null and void and request that all deposit monies be paid to Sellers as liquidated damages ...

(*Id.* at 4–6.) McKernan and Colavita agreed that West's counsel, Bell, would prepare the second mortgage documents which would secure the note specified in the supplemental agreement of sale. (*Id.* at 7.) Bell prepared the documents and submitted them to Horizon's counsel. (*Id.*) The documents provided that the security interest of the junior mortgage was limited to the Phase II property and any improvements thereon. (*Id.*) Horizon's counsel approved these documents with minor changes not material here. (*Id.*)

At the closing on September 12, 1986, McKernan and Colavita raised concerns regarding the absence of the personal guarantees of Shubin and Haas. (*Id.*) Paragraph 22 of the supplemental agreement specifically provides for such guarantees. McKernan and Colavita proposed, and West agreed, that the note be modified to allow for the personal guarantees and that the second mortgage be similarly modified. (*Id.* at 7–8.) Horizon, unrepresented by counsel at the closing, refused to agree to the changes and suggested that the settlement be postponed to allow further time for review. (*Id.* at 8.) McKernan and Colavita refused to delay and left the closing. (*Id.*) The property was sold to an uninvolved party on the next business day. (*Id.*)

Initially, we note that West appeals both the granting of the compulsory non-suit and the denial of its motion for summary judgment. (Appellant's brief at 2.) West, however, has failed to provide any argument on the propriety of the denial of summary judgment. In fact, in its statement of the questions involved, West fails to even mention the denial of summary judgment. Accordingly, as West has not properly presented this issue, we hold it waived. *See, Commonwealth v. Duden*, 326 Pa.Super. 73, 80–82, 473 A.2d 614, 618 (1984) (*citing*, Pa.R.A.P. 2116, 42 Pa.C.S.A.).

Our standard for review on an appeal from the grant of a compulsory non-suit is clear. This Court must view the record in the light most favorable to plaintiff, who is entitled to the benefit of all reasonable inferences of fact;

all doubts must be resolved in favor of plaintiff. *Kallman v. Triangle Hotel Co.,* 357 Pa. 39, 42, 52 A.2d 900, 902 (1947) (citations omitted). "[A] compulsory non-suit can be entered only in a clear case when all the facts and inferences lead unerringly to but one conclusion." *Schneider v. Sheldon,* 380 Pa. 360, 363–65, 110 A.2d 226, 228 (1955). With this standard in mind, we examine West's claims.

■ West's first point is that Horizon had no legal basis to refuse to loan the funds under the terms of the commitment letter. West argues that Section 1.2 of the commitment letter specifically refers to the supplemental agreement; the supplemental agreement requires personal guarantees by Haas and Shubin; therefore, West concludes, Horizon could foresee that personal guarantees would appear in the documents securing the second mortgage and cannot refuse to provide the loan only because the guarantees are present. We agree. While inartfully presented,[1] West's position, in essence, is that Horizon's promise in the loan commitment letter must be read in light of the language in the supplemental agreement of sale to which it refers.

The language of the commitment letter, which was drafted by Horizon, specifically permitted the purchase money mortgage "detailed in Paragraph 22 of the agreement of sale dated April 7, 1985 (and revised April 15, 1986)," provided "said mortgage was subordinate in lien priority to" Horizon's mortgage. (Trial court opinion at 5.) The revised agreement of sale specifically provides that Haas and Shubin would personally guarantee the note for the

---

**1.** West's use of the term foreseeability is unfortunate. When construing a contract, the intent of the contracting parties is the paramount consideration. *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963); *O'Farrell v. Steel City Piping Co.,* 266 Pa.Super. 219, 403 A.2d 1319 (1978). Therefore, the language used in the supplemental agreement is relevant, not because Horizon could foresee the troublesome personal guarantees, but because, as part of the surrounding circumstances and the objective to be attained by the contract, it illuminates the intent of the parties at the time of contracting. *Silverstein v. Hirst,* 376 Pa. 536, 103 A.2d 734 (1954); *Hillbrook Apartments, Inc. v. Nyce Crete Co.,* 237 Pa.Super. 565, 352 A.2d 148 (1975).

purchase of the land in addition to the junior mortgage. (*Id.* at 4.) Horizon encourages us to construe this loan commitment contract to operate as follows: the purchase money mortgage, which, as detailed in the sale agreement, specifically calls for the personal guarantees, is permitted so long as that mortgage is subordinate to Horizon's; yet Horizon has the power to refuse to loan the funds because the personal guarantees are part of the loan documentation. This we will not do.

██ It is a well-settled principle of contract construction that terms are construed *contra proferentum*, that is, against the drafter. *Central Transportation, Inc. v. Bd. of Assessment Appeals of Cambria County*, 490 Pa. 486, 496–98, 417 A.2d 144, 149 (1980) (citations omitted); *Reid v. Sovereign Camp, W.O.W.*, 340 Pa. 400, 400, 17 A.2d 890, 891 (1941) (citations omitted). It is equally well settled that a contract must be construed, if at all possible, to give effect to all of its terms. *Cerceo v. DeMarco*, 391 Pa. 157, 161–62, 137 A.2d 296, 298 (1958) (citations omitted); *DeChicchis v. School District of Borough of Elizabeth*, 142 Pa.Super. 94, 95–97, 15 A.2d 492, 493 (1940) (citation omitted). Finally, when a contract refers to a separate document, a court may examine the language of the other document to ascertain the intent of the parties. *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Master, Mates and Pilots of America, Inc.*, 497 Pa. 102, 109–11, 439 A.2d 621, 625 (1981) (citation omitted).

These principles lead to the following conclusion as regards the loan commitment letter. To give effect to the clause allowing Horizon to refuse to loan the funds, any provision in the purchase money mortgage documentation which Horizon's counsel found objectionable was grounds for Horizon to withdraw the commitment. Nonetheless, Horizon could not withdraw the commitment because of the presence of the personal guarantees because Horizon had previously specifically agreed to allow the guarantees (as they are detailed in Paragraph 22). So long as the mort-

gage granted to McKernan and Colavita is junior to the mortgage granted Horizon, and does not contain language objectionable to Horizon's counsel (other than the personal guarantees), the documents comply with the condition imposed by the language Horizon used. In effect, the clause approving the agreement in Paragraph 22 creates an exception to the power to withdraw the commitment. *See, Fogel Refrigerator Co. v. Oteri,* 10 Pa.D. & C.2d 511, 525 (1957), aff'd 391 Pa. 188, 137 A.2d 225, 233 (1958) (court should not construe one part of a contract so as to annul another part). *Accord, Appeal of Powell,* 385 Pa. 467, 474–75, 123 A.2d 650, 654–655 (1956) (citation omitted).

To construe the loan commitment letter as contended by Horizon renders the commitment letter a "rope of sand." [2] The funds will be advanced if the sellers' mortgage is junior to Horizon's; Horizon knows when making this commitment that personal guarantees are required; the funds will not be advanced if the personal guarantees are present even though the sellers' mortgage is subordinate to Horizon's mortgage. We will not adopt such a construction which would extinguish the effect of Horizon's previously expressed acquiescence in the terms of the supplemental agreement of sale. *Fogel, supra; Powell, supra.*

Horizon correctly contends that West cannot recover on its claim if West itself has breached the contract; a party who has breached the contract may not recover on it. *Wetherstein v. Gordon,* 287 Pa. 436, 135 A. 116 (1926); *Sprout v. Mints,* 128 Pa. 163, 18 A. 509 (1889); *Morrow v. Waltz,* 18 Pa. 118 (1851). Horizon contends that West's obligation to provide the mortgage and note for prior approval is a condition precedent to Horizon's obligations under the commitment letter, and contends further that West failed to present the final form of the mortgage and note to be given McKernan and Colavita until closing. Therefore, Horizon argues, they were under no obligation to provide the loan funds. West contends that this is not a

2. Funk, *A Hog on Ice and Other Curious Expressions,* Harper, 1948, p. 127.

breach, as the loan commitment letter does not call for the documents to be in their final form and further, that submission of the documents was not a condition precedent, but part of West's promise to perform.

■ Generally, an event mentioned in a contract will not be construed as a condition precedent unless expressly made such a condition. *American Leasing v. Morrison Co.*, 308 Pa.Super. 318, 325–27, 454 A.2d 555, 559 (1982) (citations omitted). The loan commitment letter makes no mention that the delivery of the mortgage and note for prior approval is to serve as a condition precedent. Accordingly, we will not construe the language in that manner. *See also, Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3rd Cir.1980).

■ Nonetheless, the promise to submit the documents for prior approval remains part of West's promised performance. Contractual terms are to be construed according to their common meaning. *Pines Plaza Bowling, Inc. v. Rossview*, 14 Pa.D. & C.2d 459, 464–65 (1957) aff'd, 394 Pa. 124, 145 A.2d 672, 676 (1958) (citations omitted); *Byrne v. Bushkoff*, 177 Pa.Super. 101, 102–04, 110 A.2d 813, 814 (1955) (citation omitted). The loan commitment letter clearly requires that West deliver "the purchase money mortgage, and note" to Horizon for prior approval. (Trial court opinion at 5.) We agree with Horizon that this means the mortgage and note in their final form. To construe these terms otherwise would allow West to submit a mortgage and note for approval, then employ a substantially different note and mortgage at closing to the detriment of Horizon. As Horizon states, the term "the" denotes "particular, specified ... things." (Appellee's brief at 14, quoting, *The American Heritage Dictionary*, 2d Ed.). The parties clearly intended the specific mortgage and note which would be used at settlement be submitted for prior approval.

■ Our analysis now turns to an inquiry of whether West's acts or omissions constitute breach preventing a recovery. What is sufficient performance and what is a

breach depends upon the surrounding circumstances and the construction given the contract involved. *Hewes v. McWilliams,* 412 Pa. 270, 275–76, 194 A.2d 339, 342 (1963). Here we have construed the contract as not allowing Horizon to refuse to perform under the loan commitment letter merely because personal guarantees were required. The mortgage and note submitted by West to Horizon for approval were in their final form, except for the inclusion of these guarantees. As the inclusion of these guarantees did not empower Horizon to withdraw its commitment, submission of the note and mortgage without them is not a material breach. Therefore, there was substantial performance by West. *Sgarlat v. Griffith,* 349 Pa. 42, 45–47, 36 A.2d 330, 332 (1944) (*citing,* RESTATEMENT (FIRST) CONTRACTS § 274, an immaterial failure of performance by one party does not discharge the other party). It is true that the doctrine of substantial performance cannot be invoked by one who has willfully, carelessly or in bad faith failed to perform. *Mort Co. v. Paul,* 167 Pa.Super. 532, 534–36, 76 A.2d 445, 447 (1950). Nonetheless, absent a willful omission, a question of substantial performance is one for the jury, not the court. *Typhoon Air Conditioning Co. v. Fried,* 147 Pa.Super. 605, 606–08, 24 A.2d 926, 927 (1942) (citations omitted). There is no allegation or evidence that West has acted willfully.

Horizon argues that West is not entitled to the benefit of the doctrine of substantial performance because the changes to be made to the loan documents, the addition of personal guarantees, are substantial changes to those documents. We agree that the addition of the guarantees substantially changes the legal significance of the documents in question. The issue presented, however, is whether the changes, substantial as they are, are material to the obligations and powers of the respective parties under the loan commitment letter. As analyzed above, they are not.

■ Horizon's final argument is that West's losses, if any, arose from the conduct of McKernan and Colavita in

strictly enforcing the letter stating that settlement had to occur on September 12, 1986. In essence, Horizon's argument is one of causation. It is arguable that McKernan and Colavita breached their agreement of sale with West. Nonetheless, it is clearly inferable from the state of the record that McKernan and Colavita walked out of the settlement because Horizon failed to perform its obligations under the commitment letter by steadfastly asserting that it would not advance the funds if the mortgage and note contained personal guarantees. In other words, Horizon's breach may have caused the breach, if any, by McKernan and Colavita. At this point in the proceedings, it is West who is entitled to all favorable, reasonable inferences of fact. *Kallman, supra.* This is not a case where all the facts and inferences lead one unerringly to conclude that West's losses were not caused by Horizon's acts; therefore, a compulsory non-suit was improper. *Sheldon, supra.*

Order granting non-suit lifted. Case remanded for further proceedings in accord with the above decision. Jurisdiction relinquished.

WIEAND, J., files dissenting statement.

WIEAND, Judge dissenting:

I respectfully dissent. West Development Group, Ltd. (West) had agreed that the closing documents in this transaction would be submitted to counsel for the lender, Horizon Financial, F.A. (Horizon) for approval prior to closing. Horizon was represented at the closing by a representative who was a non-lawyer. When the mortgage documents were changed during the closing, Horizon's representative announced that he would not complete the closing without approval of the revised mortgage documents by counsel. When he asked for additional time so that Horizon's counsel might review the altered documents, the sellers objected and walked out of the closing. Under these circumstances, West, the buyer, failed to show a breach of the loan agreement by Horizon, and the trial court correctly so held.

I would affirm the order of the trial court which denied the buyer's post-trial motion to remove the compulsory nonsuit entered in the buyer's action against the lender.