**M. BARRY SCHULTZ AND COMPANY, Plaintiff,**

v.

**APM HORSHAM, INC., Defendant and Third Party Plaintiff,**

v.

**HORSHAM INDUSTRIAL PROPERTIES and the Seltzer Organization, Inc., Third Party Defendants.**

Civ. A. No. 92–3529.

United States District Court, E.D. Pennsylvania.

Oct. 20, 1993.

---

Lewis H. Gold, Adelman, Lavine, Gold & Levin, Philadelphia, PA, for plaintiff.

Anthony J. Guida, Jr., Buchann Ingersoll Professional Corp., Pittsburgh, PA, Timothy Susanin, Buchanan Ingersoll, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM

GILES, District Judge.

M. Barry Schultz & Company ("Schultz") brings a claim against APM Horsham, Inc. ("APM") for breach of contract or, in the alternative, unjust enrichment. Jurisdiction is based on diversity of citizenship, and the case is governed by Pennsylvania law. Schultz has filed a motion for summary judgment. For the reasons stated below, the motion is granted as to APM's liability, only. The amount of damages shall be determined at a later date.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Pennsylvania law, summary judgment in a contract case is appropriate when the language of the contract is unambiguous. *Polish American Machinery Corp.*

*v. R.D. & D. Corp.*, 760 F.2d 507, 512 (3d Cir.1985). Furthermore, an ambiguous contract may be rendered unambiguous by examining other documents that relate to the same transaction. *LCI Communications, Inc. v. Wilson*, 700 F.Supp. 1390, 1395 (W.D.Pa.1988); *West Development Group, Ltd. v. Horizon Financial, F.A.*, 405 Pa.Super. 190, 592 A.2d 72, 75 (1991). Ultimately, contracts should be construed to give effect to every provision. *Commonwealth, DOT v. Manor Mines, Inc.*, 523 Pa. 112, 565 A.2d 428, 432 (1989); *Shipping Corp. of India, Ltd. v. Sun Oil Co.*, 569 F.Supp. 1248, 1254 (E.D.Pa.1983).

## II. UNDISPUTED FACTS

In 1982, Horsham Industrial Properties, Inc. ("Horsham") entered into a "Brokerage Agreement" with Schultz. *See* Exhibit "B" to Plaintiff's Complaint. Under the agreement, Schultz agreed to find a tenant for a building owned by Horsham in Montgomery County, Pennsylvania ("the Premises"). In return, Horsham agreed to pay Schultz a monthly brokerage commission equal to 6% of the monthly rental payment over the term of the lease. This agreement also created a lien on the rental payments to the extent of the brokerage commissions due. The agreement further provided that the landlord, then Horsham, would remain liable for the commissions even if the property was sold. The Brokerage Agreement bound all of Horsham's successors and assigns.

In 1983, American Property Mortgage, Inc. ("American") entered into an agreement to purchase the Premises from Horsham ("Purchase Agreement"). *See* Exhibit "3" to APM's Third Party Complaint. American's financier required American to obtain a "Subordination Agreement" from Schultz, subordinating Schultz's lien on the rental payments to the interest of the financier. *See* Exhibit "D" to Plaintiff's Complaint. Subsequent to the purchase, American assigned its rights to the Premises to APM. *See* Deposition of Tom D. McVay at p. 6, attached as Exhibit "2" to Plaintiff's Motion For Summary Judgment.[1] From 1983 to January 1990 Schultz was paid its monthly commissions; however, no broker's commissions were paid thereafter.

Schultz has brought this action against APM, the assignee of American and successor of Horsham, seeking to recover brokerage commissions under the Brokerage Agreement, the Purchase Agreement and the Subordination Agreement. However, APM argues that it is not liable for the broker's commissions as assignee of American because American did not assume the obligation to pay brokers commissions under Section 5.2 of the Purchase Agreement between American and Horsham. Therefore, APM argues that only Horsham is liable for the commissions since American could not assign lawfully that which it did not assume.

Schultz has now moved for summary judgment against APM.[2]

## III. DISCUSSION

█ Schultz contends that under the Purchase Agreement and related documents APM is liable as landlord and assignee of American for the broker's commissions. The court agrees. The Purchase Agreement, when construed to give effect to every provision and in conjunction with its related documents, unambiguously holds APM responsible for the brokerage commissions. Consequently, since no genuine issue of material fact exists, plaintiff's motion for summary judgment is granted.

Section 5.2 of the Purchase Agreement provides "Seller [Horsham] shall remain liable for the commissions under said [Brokerage] agreement ... and shall indemnify Buyer [American] against any and all liabilities in connection with said commissions." APM argues that this provision shows that the par-

---

1. McVay states that American assigned the rights to the Premises to APM and that APM was created for the sole purpose of owning the Premises.

2. On September 21, 1992, APM filed a third party complaint against Horsham and its parent corporation, The Seltzer Organization, Inc. ("Seltzer") seeking indemnification for any judgment that might be assessed against it for broker's commissions. The third party complaint was not answered, and on February 24, 1993, a default judgment was entered against Horsham and Seltzer and in favor of APM.

ties intended to hold only Horsham liable for the brokerage commissions. Schultz contends that American assumed liability for the brokerage fees and that Section 5.2 only provided American and APM with the right to indemnification from Horsham.

A court must attempt to give meaning to every provision of a contract and should construe provisions as compatible whenever possible. *Manor Mines,* 565 A.2d at 432; *Shipping Corp. of India,* 569 F.Supp. at 1254. Construing Section 5.2 of the Purchase Agreement to give effect to every provision requires the adoption of Schultz's interpretation. On its face, the first part of the above-quoted contract provision supports APM's position that only Horsham remained liable for the commissions. However, the second half of the provision supports Schultz's interpretation that American was subject to liability for the broker's commissions, but had the right to indemnification from Horsham. APM's interpretation would nullify the effect of the second half of Section 5.2 because, if American could not be held primarily liable for the broker's commissions, there would be no need for indemnification. In contrast, Schultz's interpretation gives effect to both clauses. Consequently, APM, as American's assignee, can be held liable for the broker's commissions because American assumed that risk of liability when it purchased the premises from Horsham.

The court is led to the same conclusion by another principle of contract interpretation. When a contract refers to another document, the court may examine the other document to ascertain the intent of the parties. *Wilson,* 700 F.Supp. at 1395; *West Development,* 592 A.2d at 75. In *West Development,* for example, the court rendered an ambiguous loan commitment unambiguous by examining another document referred to in the loan commitment.[3] Similarly, any possible ambiguity in Section 5.2 of the purchase agreement between American and Horsham can be rendered unambiguous by examining a related document.

Section 5.2 of the Purchase Agreement required Horsham to obtain a subordination agreement from Schultz subordinating Schultz's interests to the interests of American's financiers. The subordination agreement signed by Schultz, Horsham, and American stated that this "agreement does not ... relieve you, [American] as assignee of the Landlord, from your obligation to pay [broker's commissions] ..." Consistent with our earlier interpretation, this language makes it clear that the parties intended American to assume liability for the broker's commissions. Consequently, American's assignee, APM, can be held liable for the broker's commissions.

## IV. CONCLUSION

Plaintiff has moved for summary judgment on its breach of contract claim. No genuine issue of material fact exists, the parties only differ as to the interpretation of the contract. Because we find the Purchase Agreement unambiguously rendered APM as American's assignee liable for the brokerage fees when construed to give effect to every provision of the contract and construed in light of the related subordination agreement, plaintiff's motion for summary judgment is granted as to APM's liability.

An appropriate order follows.

### ORDER

AND NOW, this the 20th day of October, 1993, upon consideration of the plaintiff's Motion for Summary Judgment and defendant's response thereto, it is hereby ORDERED:

1. Plaintiff M. Barry Schultz & Company's Motion for Summary Judgment is GRANTED as to Defendant APM Horsham, Inc.'s liability.

---

3. In *West Development,* Horizon Financial ("Horizon") refused to honor a loan commitment issued to West because the CEO's of West were personally guaranteeing a subordinate debt. 592 A.2d at 74. The court examined the commitment letter and the underlying real estate purchase agreement and concluded that Horizon breached its agreement with West. *Id.* at 75. The court explained that Horizon clearly agreed to allow the CEO's to personally guarantee the debt because the commitment letter referred to Paragraph 22 of the underlying purchase agreement which specifically required the guaranties. *Id.*

2. Plaintiff's motion for Summary Judgment as to amount of damages is DENIED.

3. Damages shall be determined at a hearing to be scheduled.